This, it appears, was an action for the recovery of a negro. Upon the trial in the Circuit Court, exceptions were taken by Hill to testimony offered by Nall; exceptions were likewise taken to the charge delivered by the judge to the jury. Judgment having been given for Nall, Hill appealed to this court and insists here, —
1st. That the Court erred in receiving as evidence the record of the suit mentioned in the bill of exceptions.
2d. In receiving the paper to which Homer is a subscribing witness, in evidence, upon secondary testimony.
3d. In its instructions to the jury.
As to the first error assigned, we are of opinion the Court did not err, when they received the record to prove that a judgment existed against the original owner of this negro, in consequence of which he was sold by a fi. fa. It is true the judgment was not very formally entered by the clerk, but the substance of the judgment is easily understood, and that ought certainly to be sufficient for a purchaser at sheriff's sale; even if the judgment was reversed after the sale, a purchaser who happened to be a third person would not have his title affected thereby; but the man who takes the objections to this judgment is neither a party nor privy, and as to him, if the parties are satisfied, it ought certainly to be good.
Upon the second point, we are of opinion the Circuit Court did err. Horner was a subscribing witness; the paper ought to have been proved by him, or his absence accounted for in some satisfactory manner. For aught that appears, it was in the power of Nall to procure Horner's attendance or his deposition; it was therefore incorrect to permit the paper to be read, upon proof of its execution, by any other person except by Horner.
But it has been urged Nall had better evidence to establish the same point which this paper tended to prove, and therefore we ought not to reverse, although the paper was improperly received.
It is impossible for us to know whether this paper did influence the jury or not. We see that it might very naturally have had an influence upon their minds; and, as it was illegally received, the judgment ought not to stand. Upon this point, therefore, the judgment must be reversed. *Page 243 
Again, the charge of the Court to the jury was certainly very defective. The judgment, it appears, under which this negro was sold, was founded upon one recovered in North Carolina. Now if that judgment was purchased with the money or property of the debtor, the debt was extinguished, and could not afterwards be used for the purpose of shielding this negro against any fair creditor whatever. Going through the ceremony of a lawsuit, obtaining a judgment, and having property sold under it, will answer no purpose; if in truth no debt was due, if it was a contrivance to injure a creditor, like all other shifts it will fail to have the effect intended whenever the truth is found out. But, in fact, it would seem that the real merits of this case are perhaps never touched yet in the Circuit Court. When did Nall purchase this negro from him who purchased at the sheriff's sale? If he fairly purchased for a valuable consideration, before any other innocent man acquired a right, ought he not to stand in as good a situation as if he had fairly purchased from the original owner of the negro; although the man from whom he purchased might have been guilty of a fraud when he himself acquired his evidence of title? This point has not been argued, nor are the facts so stated as to enable the Court to reach it; therefore it is not intended to give any opinion upon it; but as the cause is to be retried, it would be very desirable that the real merits might be investigated and decided.